```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

ROGER H. BARNHART, SR. as Personal
Representative of the Estate of
ROGER H. BARNHART, deceased, SARAH
BARNHART and ABIGAIL BARNHART,

                Plaintiff,

vs.                                    Case No.  2:04-cv-342-FtM-29SPC

RODNEY SHOAP, individually and as
Sheriff of Lee County; KEVIN
FLICKINGER; E. MCGRAW; and PRISON
HEALTH SERVICES, a corporation,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendants Kevin Flickinger and E. McGraw's Motion to Dismiss the Third Amended Complaint (Doc. #47)[1] filed on March 25, 2005. Because affidavits, depositions, and other material were submitted in support of the Motion to Dismiss, it was converted to a summary judgment motion, and plaintiffs were provided with notice and ten days to respond. (Doc. #76). Plaintiffs timely filed their Memorandum of Law in Opposition to Defendants Flickinger and McGraw Motion to Dismiss (Doc. #78). For the reasons stated below, the motion will be granted.

---

[1] Plaintiffs have dismissed defendants Rodney Shoap individually and as Sheriff and Prison Health Services. (Docs. #81, 82, 83).

Also before the Court is Defendant's Motion to Strike Expert Affidavit. (Doc. #70). Plaintiffs timely filed their response. (Doc. #77). For the reasons discussed below, the motion to strike will be denied.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's

case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

## II.

Viewing any disputed facts in the light most favorable to plaintiffs, the Court finds the following summary judgment facts: On April 27, 2002, a deputy of the Lee County Sheriff's Office stopped Mr. Barnhart[2] driving a vehicle after observing his erratic driving. When asked whether he was under the influence of any medication or alcohol, Mr. Barnhart answered affirmatively to both questions. (Doc. #39, Ex. A, p. 4). The deputy then conducted three field sobriety tests, all of which Mr. Barnhart failed, and at 7:08 p.m. arrested Mr. Barnhart for driving under the influence.

After being transported to the Lee County Sheriff's Office, Mr. Barnhart underwent two breathalyzer tests which revealed that his alcohol level was at .018, far below the legal limit for intoxication (.08). Because Mr. Barnhart indicated that he used

---

[2]The Court will refer to the deceased Roger H. Barnhart, Jr. as Mr. Barnhart and to plaintiff Roger H. Barnhart, Sr. as plaintiff or Barnhart Sr.

-3-

Neurontin, Lipitor, and Effexnor, the deputy concluded Mr. Barnhart's impairment was due to a combination of alcohol and the medication he had taken. Mr. Barnhart was then turned over to a correctional officer and booked into the jail at 8:55 p.m.

The Lee County Sheriff's Office contracted with Prison Health Services to evaluate and treat detainees with various medical conditions. Defendants Kevin Flickinger (Flickinger) and Evelyn McGraw (McGraw) are registered nurses employed with Prison Health Services.

According to jail medical records, during the 8:55 p.m. initial screening Mr. Barnhart disclosed histories of panic attacks, depression, gastroesophogeal reflux disease and seizures; reported that he was taking the medications Neurontin, Lipitor, Librium, Effexor, Soma, and Ativan; reported no allergies to medications; reported he had been admitted to a hospital two weeks earlier for treatment of a mental disorder; admitted drinking a six-pack of beer a day; and denied all other medical problems except nervous disorders. It was noted that Mr. Barnhart was "alert, oriented and calm" and had no mobility restrictions. Mr. Barnhart's vital signs were taken and were normal.

At 10:15 p.m., Flickinger saw Mr. Barnhart after he complained of severe anxiety and headaches. Flickinger observed that Mr. Barnhart was oriented and calm. (Doc. #79, p. 2). While Mr. Barnhart historically experienced panic attacks and depression, he

showed no symptoms while he was detained. (Id., pp. 2-3). Flickinger recorded the medication which Mr. Barhart was currently taking, and noted in the medical records that Mr. Barnhart had nervous disorders and a history of alcoholism. (Id., pp. 2, 9). Mr. Barnhart reported that he had been off all medications for five days and was worried about withdrawal. During the detained period, however, Mr. Barnhart did not exhibit any signs of alcohol or drug withdrawals. (Id., pp. 2, 9-10). Flickinger took his vital signs, which were stable and normal. A call to Mr. Barnhart's pharmacy confirmed that he had filled prescriptions for Wellburtin SR, Neurontin, Hydroxyzine, Effexor, Lipitor, and Librium. Flickinger notified the jail physician, and was ordered to begin a withdrawal protocol.

When a withdrawal protocol is initiated for a detainee, the medical staff is required to take the detainee's vital signs twice a day, once in the morning and once in the evening. (Doc. #52, pp. 16-17). An indicator that a detainee has begun detoxing is when the vital signs start to increase. (Id., p. 16). At that point, with respect to monitoring, the medical staff is required to take the detainee's vital signs three times a day. (Id., p. 17).

Defendant McGraw was informed that Mr. Barnhart was under observation for "the possibility he could detox." (Id., pp. 23-24). At 5:15 a.m. on April 28, McGraw approached Mr. Barnhart's jail cell to take his vital signs as part of the withdrawal

protocol. McGraw found Mr. Barnhart sleeping soundly. (Id., p. 24). The on-duty correctional officer called for Mr. Barnhart four times with no success in waking him. (Id.) McGraw noted that, as an apparent response to the correctional officer, Mr. Barnhart made movements such as stretching and turning his head from side to side. (Id.) McGraw observed that Mr. Barnhart was not under distress and, upon timing his respirations, concluded his breathing was normal. (Id.) She did not take his vital signs, but recorded that Mr. Barnhart's vitals should be taken later that morning. (Id.) Less than two hours later, McGraw saw Mr. Barnhart standing at his cell door speaking with a correctional officer in no apparent distress. (Id.) McGraw was further informed that Mr. Barnhart had eaten breakfast and would be released shortly. (Id.) The final note in the medical record at 7:10 a.m. was Flickinger's note that the night shift reported Mr. Barnhart had slept through the night without complaints.

Mr. Barnhart was released On April 28, 2002, at 6:08 a.m., approximately nine hours after his booking into the jail. (Doc. #40, Ex. G). He was driven to the house of Michael Davis (Davis), a friend and his partner as a paramedic at the Estero Fire Department. Davis saw Mr. Barnhart about three hours after his release from jail, and described him as appearing unsteady, awkward, impaired, unrested, rugged, and jittery. Davis testified that Mr. Barnhart had seem "impaired" during their conversation but

did not seem in danger. Davis had an extended conversation with Mr. Barnhart about a variety of topics, during which Mr. Barnhart appeared fully aware and coherent. At one point Davis suggested Mr. Barnhart get some sleep in the spare bedroom. Mr. Barnhart initially declined, but after an hour-and-a-half of conversation went to the bedroom. Davis heard him snoring within ten minutes and throughout the day. At about 3:15 p.m. Davis left the house with Mr. Barnhart still sleeping. When Davis returned at about 4:00 p.m. he could not hear snoring, so he entered the bedroom and found Mr. Barnhart lying on the bed without respirations. Davis began CPR while his wife called 911. Mr. Barnhart was taken to the hospital, where he was later declared dead.

The Medical Examiner's report indicated that an autopsy showed Mr. Barnhart's brain was very swollen, indicating a lack of oxygen to the brain at the time of death. The liver was firm, which was attributed to Mr. Barnhart's history of Hepatitis-C and chronic alcoholism. A toxicology examination revealed the presence of the following medications in his system: bupropion (Wellbutrin), acetaminophen (Tylenol), nicotine, caffeine, Chlordiazepoxide (Librium), hydrocodone, Effexor, Phenothiazine, nordiazepam (Valium), hydroxyzine (Vistaril), and promethazine (Phenergan). There were high levels of the acetaminophen and hydrocodone. The Medical Examiner concluded that the cause of death was polydrug toxicity, meaning that the drugs in his system, combined with the

Hepatitis-C condition (which reduced his ability to metabolize the drugs), caused his death.  The Medical Examiner testified by deposition that of the medications reported to jail staff by Mr. Barnhart, Neurontin, Lipitor, Effexor, Soma and Ativan were not found on autopsy.  She further testified that medications found on autopsy but not reported to the jail staff were bupropion, acetaminophen, phenothiazine and hydrocodone.  Thus, Mr. Barnhart had provided an inaccurate report of the drugs that he used to Flickinger during the initial medical assessment.

Dr. Mark Lokitus, D.O., testified by deposition that Mr. Barnhart had a severe problem with alcohol dependency and was being treated with medications for bipolar disorder.  Dr. Lokitus, who is board certified in psychiatry and addiction medicine, testified that there are physical symptoms of person suffering from withdrawal, which include sweats, chills, tremors, increased blood pressure, shortness of breath, and eventually delerium tremens.  While Dr. Lokitus knew of no other physician who was prescribing medications to Mr. Barnhart, there were six or seven medications found by the toxicology examination which he had not prescribed.  Dr. Lokitus was greatly concerned by the combination of drugs found in the toxicology report, because they all had sedating effects and the combination could lead to respiratory depression and death.

The Third Amended Complaint (Doc. #43) alleges two causes of action against Flickinger and McGraw: (1) violation of Mr.

Barnhart's right against Cruel and Unusual Punishment Clause under the Eighth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983 (Count I); and (2) a state law negligence claim (Count III).

### III.

#### A.  Section 1983 General Principles

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiff must prove that (1) defendants deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir.), reh'g and reh'g en banc denied, 277 F.3d 1381 (11th Cir. 2001). In addition, plaintiff must establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001)(en banc); Swint v. City of Wadley, Ala., 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

As an initial matter it is clear that, contrary to the assertion in the Third Amended Complaint, Mr. Barnhart had no Eighth Amendment rights. "In the case of a pre-trial detainee . .

. the Eighth Amendment prohibitions against cruel and unusual punishment do not apply." Cook v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005)(citation and quotation omitted). Rather, Mr. Barnhart's right against cruel and unusual punishment as a pre-trial detainee is premised on the due process clause of the Fourteenth Amendment. Cook, 402 F.3d at 1115. See also Purcell v. Toombs County, Ga., 400 F.3d 1313, 1318 n.13 (11th Cir. 2005); Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998). This pleading defect is inconsequential, however, because the legal standards under the Eighth Amendment and the Fourteenth Amendment due process clause are the same, and the Eighth Amendment case law is applicable. Cook, 402 F.3d at 1115; Taylor v. Adams, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000); Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425, n.6 (11th Cir. 1997). "Thus, pretrial detainees . . . plainly have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries, . . ." Cook, 402 F.3d at 1115.

**B. Fourteenth Amendment Due Process Clause Principles**

The applicable legal standards are well-established. "An officer violates a detainee's Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee." Crosby v. Monroe County, 394 F.3d 1328, 1335 (11th Cir. 2004)(quoting Lancaster, 116 F.3d at 1425). To show deliberate indifference to a serious medical need,

plaintiffs must establish both an objective and a subjective prong: Plaintiffs must first prove an objectively serious medical need, then they must prove that the jail official acted with an attitude of deliberate indifference to that need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004); Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and, in either case, must be one that if left unattended poses a substantial risk of serious harm. Brown, 387 F.3d at 1351; Farrow, 320 F.3d at 1243. To establish "deliberate indifference," plaintiffs must prove (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. Brown, 387 F.3d at 1351; Farrow, 320 F.3d at 1245. Inadvertent or negligent failure to provide adequate medical care does not rise to a constitutional violation. Farrow, 320 F.3d at 1243.

### C. Objective Serious Medical Need

The Third Amended Complaint is vague as to what objective serious medical need existed while Mr. Barnhart was at the jail. It simply alleges that Mr. Barnhart was not under the influence of alcohol, but "was suffering from an adverse reaction to medication and/or psychiatric or medical illness." (Doc. #43, ¶8). In their opposition to the subject motion, plaintiffs described the serious

medical need as follows: "Plaintiff's decreased exhibited signs of extreme impairment upon arrest, yet the Breathalyzer test he was administered showed no significant blood alcohol levels. Defendants failed to take necessary action to arouse the deceased or to discover the reason he could not be aroused. . . . The deceased was suffering from the effects of something, and without knowing what that something was, his condition can only be described as an obvious and serious medical need." (Doc. #78, p. 8).

The Court finds plaintiffs' description of the serious medical need insufficient. To say Mr. Barnhart was suffering from "something" is not sufficient to identify an objectively serious medical need. The record does, however, establish the existence of the objectively serious medical need of alcohol/medication withdrawal. Case law is clear that alcohol withdrawal is a serious medical need within the meaning of the Eighth and Fourteenth Amendments. Lancaster, 116 F.3d at 1425-26; Morrison v. Washington County, 700 F.2d 678, 686 (11th Cir. 1983); Fielder v. Bosshard, 590 F.2d 105 (5th Cir. 1979). Mr. Barnhart told Flickinger of his concern about alcohol/medication withdrawal, Flickinger told the jail doctor, and the doctor ordered implementation of the withdrawal protocol. Thus, the participants in this case recognized the condition as a serious medical need. The Court finds that the alcohol/medication withdrawal in this case was an

objectively serious medical need within the meaning of the Fourteenth Amendment.

### D. Deliberate Indifference

**(1) Subjective Knowledge of Risk of Serious Harm**

It is clear that both Flickinger and McGraw knew of the concerns about alcohol/medication withdrawal. Flickinger had taken the information from Mr. Barnhart and reported it to the jail doctor. Both defendants knew the doctor had ordered the withdrawal protocol because of this concern.

There is no evidence, however, that either defendant knew that Mr. Barnhart was in urgent need of any particular action or that the condition was currently life-threatening, or would be exacerbated by delay in treatment. While in custody, Mr. Barnhart's vital signs were taken twice and were normal and stable. He slept through the night without complaints, and had breakfast before his release. Additionally, Mr. Barnhart was observed standing at his cell and speaking with a correctional officer. In short, Mr. Barnhart did not exhibit any signs that would trigger a need for immediate medical attention. In fact, hours later Mr. Barnhart's paramedic colleague and friend verified that Mr. Barnhart appeared impaired but not in any danger.

**(2) Disregard of Known Risk**

Knowledge of the concern about withdrawal is not sufficient to establish a constitutional claim. Plaintiffs can point to no

evidence demonstrating that Flickinger intentionally refused to aid Mr. Barnhart or had the required intent. In fact, the record shows otherwise. As to McGraw, the only thing plaintiffs point to is her failure to take vital signs when she found Mr. Barnhart sleeping. Given the totality of the facts, this cannot be said to constitute a deliberate disregard for a known risk. E.g., Taylor v. Adams, 221 F.3d 1254, 1258-60 (11th Cir. 2000). McGraw noted that Mr. Barnhart was not in distress and measured his breathing. She recorded that his breathing was normal and that his vital signs should be taken later that morning. Without more, McGraw's action in this instance does not support a finding that McGraw intentionally disregarded a known risk. The Court finds that Flickinger and McGraw were not deliberately indifferent to Mr. Barnhart's condition under the circumstances.

**(3) More Than Mere Negligence**

For the reasons discussed above, the conduct or omissions of the defendants do not amount to more than negligence. Thus, the Court will grant defendants Flickinger's and McGraw's Motion for Summary Judgment as to Count I.

### IV. Striking Affidavit

Defendants seek to strike the Affidavit of Dr. William R. Anderson. The Court will deny the motion for summary judgment purposes, but finds that the Affidavit fails to create any material issue of disputed fact. The Affidavit is based upon some facts

which are clearly not accurate (¶ 3), is replete with qualifying verbiage indicating Dr. Anderson is not really stating an opinion based upon facts (e.g., ¶ 9 "This seems to be the case . . . It appears. . ."; ¶ 10 "Mr. Barnhart appears. . ."), contains conclusory statements (¶¶ 10, 11, 12), and does not specifically address either of the two remaining defendants (e.g., ¶ 13).

**V.**

Plaintiffs also bring a negligence claim against Flickinger and McGraw (Count III).  Having granted judgment on the only federal claim, the Court will exercise its discretion under 28 U.S.C. § 1367(c) and decline to exercise supplemental jurisdiction on the state law negligence claim.  The only issues related to this count are state law issues, and the trial has been continued at defendants' request.

Accordingly, it is now

**ORDERED:**

1.   Defendants Kevin Flickinger and E. McGraw Motion to Dismiss the Third Amended Complaint(Doc. #47), construed as a motion for summary judgment, is **GRANTED** as to Count I and is **DENIED** as to Count III.  Count III is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

2.   The Clerk of the Court shall enter judgment (a) in favor of defendants Flickinger and McGraw and against plaintiffs as to Count I pursuant to summary judgment, (b) dismissing Count III

without prejudice for lack of jurisdiction, and (c) dismissing the other defendants with prejudice pursuant to the Stipulations of Dismissal.

    3.   The Clerk of the Court shall terminate all pending deadlines and hearings and close the file.

    **DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of June, 2005.

                                             JOHN E. STEELE
                                             United States District Judge